[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 16, 2006**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 05-13389
Non-Argument Calendar

_____

Agency No. A96-169-965

HENDRA THAMSIR,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 16, 2006)**

Before BARKETT, MARCUS and WILSON, Circuit Judges

PER CURIAM:

Hendra Thamsir, a native and citizen of Indonesia, petitions for review of the order by the Board of Immigration Appeals ("BIA") adopting and affirming the immigration judge's ("IJ") final order of removal and denial of withholding of removal. Thamsir, who states he is Christian and of Chinese ethnicity, alleges that he and his family were attacked and beaten at their home in Indonesia by Muslims for being Christian.

On appeal, Thamsir argues that the IJ's credibility findings were based on speculation and conjecture instead of a rational foundation, and that his testimony should be deemed credible. Thamsir argues that he testified specifically about the problems he encountered in Indonesia based on his religion and ethnicity.[1]

I.

To the extent that the IJ's decision was based on a legal determination, our review is de novo. D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir.

---

[1] Thamsir concedes on appeal that the denial of his asylum claim as untimely was not subject to review, and states that he is "only appealing the IJ's and Board's denial of his withholding of removal claim." Because Thamsir does not offer any argument challenging the determination that his asylum application was untimely, the issue is abandoned. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n. 2 (11th Cir.2005). Even if the issue was not abandoned, we do not have jurisdiction to review the Attorney General's decision denying a request for asylum as untimely under 8 U.S.C. § 1158(a)(3). Fahim v. U.S. Atty. Gen., 278 F.3d 1216, 1217 (11th Cir. 2002).

Thamsir also does not raise any argument on appeal addressing the denial of relief under the United Nations Convention Against Torture ("CAT relief"), 8 C.F.R. § 208.16(c). (See Blue Brief). Therefore, he has also abandoned that issue. Sepulveda, 401 F.3d at 1228 n.2.

2

2004). The IJ's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar v. Ashcroft, 257 F.3d 1262, 1283-84 (11th Cir. 2001) (quotation omitted). We cannot engage in fact-finding, nor may we weigh evidence that was not previously considered below. Id. at 1278. Therefore, a finding of fact will be reversed "only when the record compels reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 125 S.Ct. 2245 (2005); see also 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . .").

The IJ makes credibility determinations for withholding of removal claims in the same manner as asylum claims. INA § 241(c), 8 U.S.C. § 1231(c). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.16(b). Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishment as the applicant repeatedly recounts his story. See In re B-, 21 I & N Dec. 66, 70 (BIA 1995). The weaker the

3

applicant's testimony, however, the greater the need for corroborative evidence. In re Y-B-, 21 I & N Dec. 1136, 1139 (BIA 1998).

Like other factual findings, credibility determinations are reviewed under the substantial evidence test, and the IJ must offer specific, cogent reasons for an adverse credibility finding.[2] Forgue v. U.S. Att'y General, 401 F.3d 1282, 1286-1287 (11th Cir. 2005). Generally, minor inconsistencies and minor admissions that "reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988). The discrepancies must involve the "heart of the asylum claim." Ceballos-Castillo v. INS, 904 F.2d 519, 520 (9th Cir. 1990); see also Gao v. Ashcroft, 299 F.3d 266, 272 (3rd Cir. 2002) (holding that an IJ's adverse credibility finding must go to the heart of the applicant's claims and cannot be based upon minor inconsistencies, discrepancies, or omissions). Even a single inconsistency that goes to the heart of an applicant's asylum claim, however, such as the basis of his fear, may be sufficient to support an adverse credibility finding. See Chebchoub v. INS, 257 F.3d 1038, 1043 (9th Cir. 2001). Once an adverse

---

[2] On May 11, 2005, President Bush signed into law the Real ID Act of 2005 ("RIA"), Pub. L. No. 109-13, Div. B, 119 Stat 231. RIA 101(a)(3) amends INA § 208(b)(1), 8 U.S.C. § 1158(b)(1), regarding the assessment of credibility. This amendment took effect on the date enactment and applies to applications for asylum and withholding of removal made on or after that date. See RIA 101(h)(2). Because Thamsir's application for asylum was filed before May 11, 2005, the credibility standard of the RIA does not apply to his petition.

4

credibility finding is made, the applicant bears the burden of showing that the IJ's credibility decision was not supported by "specific, cogent reasons" or was not based on substantial evidence, and, like any fact finding, a credibility determination may not be overturned unless the record compels it. Forgue, 401 F.3d at 1287 (internal quotation omitted). "If the applicant produces no other evidence other than his testimony, an adverse credibility determination is alone sufficient to support the denial of an asylum application." Id.

II.

An alien is entitled to withholding of removal under the INA if he can show that his life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Mendoza v. U.S. Att'y General, 327 F.3d 1283, 1287 (11th Cir. 2003); see also INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). The alien bears the burden of demonstrating that it is "more likely than not" that he will be persecuted or tortured upon his return to the country in question. Fahim, 278 F.3d at 1218. This is a more stringent burden than for asylum. Sepulveda, 401 F.3d at 1232. If the alien establishes past persecution based on a protected ground, there is a rebuttable presumption that his life or freedom would be threatened upon return to his country. See Mendoza, 327 F.3d at 1287; see also 8 C.F.R..§ 208.16(b)(1)(i). An

alien who has not shown past persecution, however, may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground. See 8 C.F.R. § 208.16(b)(2).

Although the INA does not expressly define "persecution" for purposes of qualifying as a "refugee," see 8 U.S.C. § 1101(a)(42), we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda, 401 F.3d at 1231 (quotations omitted). Menacing telephone calls and threats do not rise to the level of persecution. See id.

III.

Upon review of the record and upon consideration of the parties' briefs, we find no reversible error with respect to the IJ's credibility findings or determination that Thamsir did not suffer past persecution or face a threat of future persecution if returned to Indonesia. Although the IJ did not find that Thamsir lacked credibility per se, the IJ assessed that several parts of his testimony, including the attack at his home in Indonesia, were not credible. This finding is supported by substantial evidence. Although the attack allegedly occurred shortly before Thamsir obtained his visa, Thamsir did not testify that he mentioned the attack or requested asylum or refugee status when applying for a visa or after he arrived in the United States.

6

Thamsir did not mention the attack in his interview with immigration Agent Tracy Townsend either. Agent Townsend's report did reveal, however, that Thamsir stated that he only desired to remain in the United States for economic reasons and drove to Washington to file a political asylum application at the urging of his pastor Mesach Agung Wijoyo. While Thamsir disputed parts of Agent Townsend's report at the asylum hearing, he did not challenge the admissibility of the report then or on appeal.

The record also reveals that Thamsir's mother visited him in the United States at least once and returned voluntarily to Indonesia. Agent's Townsend's report states that Thamsir's parents were alive and well in Indonesia. Because Thamsir did not claim that the Muslim attackers only targeted him, it was reasonable for the IJ assume that Thamsir could also live safely in Indonesia if his parents could. The record also indicated that Thamsir registered at the immigration office with over 30 other Indonesian males who were associated with pastor Wijoyo. The IJ noted throughout the proceedings that Thamsir's allegations were similar to those raised in the asylum petitions by those Indonesians, warned Thamsir about filing a frivolous application, and asked for documentary evidence to support his claims. Thamsir, however, could not rehabilitate his testimony by

providing documentation of his hospital visit to prove the injuries he received from the alleged beating.

The totality of the evidence discussed above provides substantial evidence to support the IJ's finding that Thamsir's testimony regarding the 2000 attack – his primary evidence of past persecution – was not credible.

The only remaining evidence of past persecution was Thamsir's testimony that he was required to pay more for government documents because he was not a Muslim, and that it takes Christians longer to obtain permits to build churches. Thamsir admitted that he had no documentary evidence to support the former claim. Furthermore, neither of these incidents, even if true, would rise to the level of persecution. Sepulveda, 401 F.3d at 1231. Because neither of these incidents constitute persecution and the IJ discredited Thamsir's testimony regarding the 2000 attack, the finding that Thamsir did not suffer past persecution is supported by substantial evidence.

## IV.

The IJ's finding that Thamsir did not establish that it is more likely than not that he will be persecuted upon return to Indonesia is supported by substantial evidence. Although Thamsir testified that he and his parents were attacked at his home once in 2000, he admitted that his mother has visited him in the United

States and voluntarily returned to Indonesia. Agent Townsend's report states that Thamsir's parents were "alive and well" in Indonesia. If his family is Christian and Chinese, it is unclear why his parents would be safe in Indonesia but he would not. Thamsir did not testify that he or his family had received any threats or experienced any discrimination based on their race or religion since he came to the United States. Thus, the IJ's finding that Thamsir would not be persecuted based on his race or religion if returned to Indonesia is supported by substantial evidence.

**AFFIRMED.**