[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2006
THOMAS K. KAHN
CLERK

No. 05-14795
Non-Argument Calendar

_____

BIA No. A78-585-150

ANA MARIA MARTINEZ VALDERRAMA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 23, 2006)

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Ana Maria Martinez Valderrama petitions for review of the Board of

Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") order denying her application for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture ("CAT"). After review, we deny the petition for review.

## I. BACKGROUND

Valderrama, a native and citizen of Colombia, entered the United States in April 2000 as a non-immigrant visitor with authorization to remain until October 2000. In October 2000, Valderrama, on behalf of herself and her husband Edgar Fernando Reyes Acevedo, filed an application for asylum, withholding of removal and CAT relief. Valderrama sought asylum based on her membership in the Conservative Party and her work with the poor in Roldanillo, Colombia for a non-profit agency known as "Association of Professionals of Roldanillo" ("ASPROR").

In her application, Valderrama stated that she and her husband were singled out by the guerrilla group known as the National Liberation Army ("ELN"). The ELN made telephone threats at Valderrama's home and the business she shared with her husband, sent insulting notes to their home, painted a threatening message on their house, watched their house and came to their home with a list of names. Valderrama and her husband also were told by a restaurant owner that the ELN intended to kill them.

2

The application also stated that Valderrama and Acevedo were intercepted on the road by a van containing ELN members. The ELN members overtook them by force, tied them up and drove them to an isolated area where there were other prisoners. Valderrama claimed that she was "put with a group of women," and raped by an ELN member. The rapist informed her that the action was taken so that she would not "bother them anymore," and to set an example. The ELN members then left, and the petitioners escaped at dawn and walked to town, where they asked for and received help.

At a hearing before the IJ, Valderrama and Acevedo both testified regarding the actions taken by the ELN against them, including the kidnapping, rape and escape. In addition, Valderrama submitted the following exhibits: (1) a police report filed by Valderrama and Acevedo in Roldanillo on October 25, 1999, stating that the ELN had "mentally and physically tortured" them through phone calls, death threats to employees on their ranch, spray painting their house in August 1999, learning that they were on a hit list in September 1999 and, on October 22, 1999, kidnapping them and raping Valderrama; (2) a letter from the public prosecutor's office in Roldanillo, stating that Valderrama and Acevedo were the victims of "Extortion, Carnal Violation, Personal Injuries and Torture" at the hands of the ELN; (3) a document from "San Antonio Hospital" stating that Valderrama had been treated on October 25 and 26, 1999 for bruises, headache, insomnia

3

anxiety and depression, but making no mention of sexual assault or rape; (4) letters from the Conservative Party affirming the participation of Valderrama and Acevedo in the organization; (5) a letter from the City of Roldanillo stating that Valderrama and Acevedo were registered with the city's "community action board"; and (6) copies of photo-identification ASPROR membership cards for Valderrama and Acevedo and a document stating they were both members.

In an oral decision, the IJ denied asylum, withholding of removal and CAT relief and ordered Valderrama and Acevedo removed. The IJ found the testimony of Valderrama and Acevedo not to be credible, citing "gross inconsistencies between both of their testimonies" and concluding that the documents submitted as exhibits were "fraudulent or not authentic . . . ." The IJ specified the following as some of the "many" evidentiary inconsistencies leading to an adverse credibility determination: (1) the date and time of the alleged kidnapping and rape; (2) the number of men in the van; (3) the type of weapons used; (4) the manner in which the petitioners were tied up; (5) the existence of light and electricity inside the house to which they were taken and the natural light outside of the house; (6) the number and dates of the trips to the hospital following the alleged kidnapping; (7) the number of days spent at Valderrama's aunt's house after the kidnapping; and (8) the month the petitioners were notified they were on the hit list.

The IJ found in particular that the medical report and prosecutor's report

4

were "clearly not valid" in light of the discrepancy between the petitioners' testimonies as to the dates the documents were executed and the dates listed on the reports. The IJ noted that the medical report did not mention a sexual assault, that some of the letters appeared to have been printed on the same machine, and that Valderrama and Acevedo contradicted each other as to whether the entities who sent the letters were housed in the same building and thus could share the same printer. The IJ also noted that the letter indicating that Acevedo was a member of the community action board was inconsistent with his testimony.[1] The IJ denied asylum, withholding of removal, and CAT protection based upon his finding that the kidnapping and rape "never happened."

Valderrama appealed to the BIA, arguing that the IJ's adverse credibility finding was based on misinterpretations of the evidence, inadequate questioning during the hearing and "minor" inconsistencies. The BIA adopted and affirmed the IJ's decision, stating that all of the inconsistencies noted by the IJ were "present and material," except the type of weapons carried by the men in the van, which the BIA determined was "not a clear inconsistency." The BIA noted that the inconsistencies were numerous and "not just between the two witnesses, but also with the asylum application." The BIA also noted that Valderrama's explanations

----

[1]Although the IJ did not note this, the documentation indicated that Acevedo was also a member of ASPROR, which is also inconsistent with Acevedo's hearing testimony.

5

for the inconsistencies did not address the problem with her documents. This appeal followed.

## II. DISCUSSION

### A.    Asylum and Adverse Credibility

An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1)(A). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

To carry this burden of proving statutory "refugee" status, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287.

6

An alien's testimony, if credible, may be sufficient to sustain the burden of proof for asylum. 8 C.F.R. § 208.13(a). "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). Nevertheless, the IJ must still consider all of the evidence submitted by the applicant, including documentation. Id.

"Once an adverse credibility finding is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Id. When the IJ enumerates an applicant's inconsistencies and is supported by the record, we "will not substitute our judgment for that of the IJ with respect to its credibility findings." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 819 (11th Cir. 2004).

**B.    Valderrama's Claim**

On appeal, Valderrama argues that the IJ's adverse credibility determination was not supported by substantial evidence. Upon review of the record, however, we disagree.[2]

---

[2]We review the BIA's decision, "except to the extent that it expressly adopts the IJ's opinion." Al Najjar, 257 F.3d at 1284. "Insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well." Id. Here, because the BIA's opinion adopted the IJ's opinion, we review both opinions. In doing so, we review legal determinations de novo. D-Muhumed, 388 F.3d at 817. We review factual determinations, including credibility determinations, under the substantial evidence test. Id. at 817-18. "To reverse the IJ's factual findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

The IJ specifically enumerated the inconsistencies upon which he based his adverse credibility determination and these inconsistencies are supported by the record.[3] Notably, Valderrama does not dispute that these inconsistencies appear in the record. Rather, Valderrama argues that they do not constitute substantial evidence because they are "minor" and do not "go to the heart" of her asylum claim or because they can be explained by the fact that the events took place five years earlier and under traumatic circumstances.

Although we have not directly addressed the issue, the Third Circuit and the Ninth Circuit have indicated that an adverse credibility determination based on inconsistencies must involve inconsistencies relating to the basis of the alleged fear of persecution (i.e., "the heart of the asylum claim") and that minor inconsistencies about collateral matters or unimportant facts will not support an adverse credibility finding. See Gao v. Ashcroft, 299 F.3d 266, 272 (3[d] Cir. 2002); Chebchoub v.

---

[3]Our review of the record indicates that all of the inconsistencies identified by the IJ have support in the record with one exception. The IJ found that the prosecutor's report was dated one day before the medical report such that it contradicted Valderrama's testimony that the petitioners retrieved the medical report before filing a report with the prosecutor. However, the record reveals that the report from the prosecutor's office was dated October 26, 1999. The police report stated that Valderrama was admitted to the hospital on October 25, 1999, and was filed on that day as well. This one incorrectly identified inconsistency does not compel reversal in light of the numerous additional inconsistencies correctly identified between the application, the testimony, and documentary evidence.

8

INS, 257 F.3d 1038, 1043 (9th Cir. 2001).[4] However, neither of these circuits cite

any statute or regulation for this demarcation in credibility determinations or for

the proposition that inconsistencies must relate to the heart of the asylum claim. In

other non-immigration cases, this Circuit has not required a witness's inconsistent

testimony to relate to the heart of the claim before the factfinder can disbelieve that

witness. See, e.g., Conroy v. Abraham Chevrolet-Tampa, Inc., 375 F.3d 1228,

1231 (11th Cir. 2004). However, we need not resolve this issue because the

numerous inconsistencies identified by the IJ do indeed relate to the events giving

rise to Valderrama's fear of persecution and thus go to the heart of Valderrama's

asylum claim. Specifically, the IJ identified inconsistencies relating to the key

incidents that form the basis of Valderrama's asylum claim – the kidnapping, rape,

and escape – that led the IJ to conclude that those events never happened.

Therefore, the inconsistencies are material rather than minor.

Given the above-mentioned inconsistencies and the doubt they cast upon the

authenticity of some of Valderrama's supporting documents, the record does not

compel reversal of the IJ's adverse credibility determination. Further, the

---

[4]Congress recently overrode these circuits' precedent by enacting the REAL ID Act of 2005, which, among other things, amended the law regarding credibility determinations to permit an adverse credibility finding based on inconsistencies "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim . . . ." See Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 230, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). Because Valderrama's asylum application was filed before May 11, 2005, the date the REAL ID Act was enacted, however, these new provisions do not apply to her claim. Id. § 101(h)(2), 119 Stat. 230, 305.

documentary evidence does not compel the conclusion that Valderrama is eligible for relief. See Forgue, 401 F.3d at 1287. As the IJ noted, the documents are of questionable authenticity and do not show how Valderrama was singled out on account of a statutory factor. Accordingly, substantial evidence supports the IJ's determination that Valderrama failed to establish eligibility for asylum.[5]

Based upon the foregoing, we deny the petition for review.

**PETITION DENIED.**

---

[5]Because Valderrama did not present credible evidence that she is eligible for asylum, she likewise failed to establish eligibility for withholding of removal or CAT relief. See Al Najjar, 257 F.3d at 1292-93.