[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13044
Non-Argument Calendar
_____

BIA No. A98-552-267

ROBERTO PANIAGUA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

**(March 7, 2008)**

Before TJOFLAT, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Roberto Paniagua, a citizen of Colombia, petitions this Court for review of the Board of Immigration Appeals's ("BIA's") decision affirming the Immigration Judge's ("IJ's") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231. On appeal, Paniagua argues that the BIA erred by (1) affirming the IJ's finding that Paniagua's testimony was not credible because the IJ relied on minor inconsistencies and translation errors, which did not relate to the heart of his asylum claim; and (2) affirming the IJ's finding that Paniagua failed to establish past persecution or a well-founded fear of future persecution. After thorough review of the record, we deny the petition for asylum and withholding of removal.[1]

Because the BIA in this case did not expressly adopt the IJ's decision, we only review the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "To the extent that the BIA's decision was based on a legal determination, [our] review is de novo." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review the BIA's factual findings under the substantial evidence test, and must affirm findings that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (quotation omitted). "To reverse a factual

---

[1] As an initial matter, Paniagua abandoned his CAT claim by not arguing it on appeal, so we will not address this claim. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("[w]hen an appellant fails to offer argument on an issue, that issue is abandoned.").

finding by the BIA, [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (quotation omitted). As with other factual findings, a credibility determination may not be overturned unless the record compels it. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). The BIA must offer specific, cogent reasons for adverse credibility findings. Id. While an adverse credibility determination alone may be sufficient to support the denial of an asylum application when the applicant produces no evidence other than his testimony, an adverse credibility determination does not alleviate the BIA's duty to consider other evidence produced by the asylum applicant. Id.

Paniagua argues on appeal that the BIA erred in affirming the IJ's adverse credibility determination because it was not supported by substantial evidence. Specifically, he argues that the following discrepancies resulted from translation errors or were otherwise insignificant: (1) the time at which his first abduction occurred; (2) the number of individuals involved in the first abduction; (3) whether Paniagua's nose was broken or bleeding as a result of the assailants' actions; (4) the type of vehicle Paniagua's assailants were utilizing; and (5) the year in which Paniagua received an envelope containing newspaper articles describing the deaths of two of his friends and a note stating that Paniagua would be next. Paniagua further contends that the following omissions were likewise insignificant:

3

(1) the police report he filed with respect to his first abduction, which did not conflict with his testimony and which merely suffered from a lack of detail; (2) his inclusion of only one address for March 2002 to May 2004 in his asylum application as he had been moving around during that period staying with different relatives; and (3) his mother's failure to mention the Revolutionary Armed Forces of Colombia (the "FARC") in reports she filed with authorities, since she still is living in Colombia and could suffer repercussions by mentioning that organization. Finally, he argues that his testimony was supported by a "multitude" of documentary evidence.

Because some of Paniagua's inconsistencies directly relate to the "heart" of his asylum request, this Court need not give significant weight to the minor inconsistencies and omissions, such as the time of and number of people involved in the first incident, the type of vehicle used by the assailants, the lack of detail in the police report, and the failure to include all of his addresses in his application.[2]

---

[2] Where, as in Paniagua's case, a petition for asylum was filed before May 11, 2005, some circuits have held that an adverse credibility finding cannot be based on minor inconsistencies and minor admissions that "reveal nothing about an asylum applicant's fear for his safety"; rather, the discrepancies must involve the "heart of the asylum claim." See, e.g., Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Vilorio-Lopez v. INS, 852 F.2d 1137, 1142 (9th Cir. 1988). This Court, however, has never adopted that test in a published opinion. See, e.g., Thamsir v. U.S. Att'y Gen., 167 F. App'x 788, 790 (11th Cir. 2006) (unpublished opinion saying that discrepancies noted by IJ must go to the heart of the claim); Valderrama v. U.S. Att'y Gen., 180 F. App'x 122, 125-26 (11th Cir. 2006) (unpublished opinion discussing both standards of review); Medina v. U.S. Att'y Gen., 188 F. App'x 807, 808-09 (11th Cir. 2006) (unpublished opinion supporting heart-of-the-claim test); Drejaj v. U.S. Att'y Gen., 192 F. App'x 847, 855 n.4 (11th Cir. 2006) (unpublished opinion questioning validity of heart-of-the-claim test). But as we note above, we need not resolve the

However, there were serious inconsistencies and omissions in his testimony and evidence that support the BIA's conclusion that Paniagua lacked credibility. First, Paniagua did not in his application indicate that he knew which group was pursuing him. In contrast, he testified that the group identified itself as the FARC but that the person helping him fill out the application told him not to mention the FARC. Next, in Paniagua's application, he stated that the FARC leader with whom he spoke during the second incident was threatening him with a silver revolver. His testimony, however, did not indicate that he was threatened with the revolver, an event that would readily be remembered. Third, Paniagua failed to adequately explain why his mother, who witnessed some of the events in question and supposedly has been visited by the FARC since Paniagua has been out of the country, could not have provided an affidavit to corroborate Paniagua's testimony. Fourth, it is unclear why the FARC, if it knew where Paniagua was located, would leave him alone for two years after the second incident and wait to deliver the articles until several months following the deaths of his friends.

We recognize that there was some evidence that corroborated Paniagua's claims. For example, the police report showed that Paniagua attempted to seek

validity of the test here. (The REAL ID Act changed the credibility standard for applications made on or after May 11, 2005, allowing credibility to be determined based on the totality of the circumstances and all relevant factors -- including the demeanor and candor of the applicant or witness and the consistency of his testimony and statements -- regardless of whether they go to the heart of the claim. 8 U.S.C. § 1158(b)(1)(B)(iii).)

help from the police, and there also was evidence that his mother went to the police as well. The Country Reports and other articles he submitted supported the notion that the type of FARC activities testified to by Paniagua are common in Colombia.

Nevertheless, while the record could support a contrary conclusion as to Paniagua's credibility, the record does not compel it. See Forgue, 401 F.3d at 1287. In short, substantial evidence supports the BIA's conclusion that Paniagua lacked credibility, and the documentary evidence was not sufficient to establish Paniagua's eligibility for relief. Consequently, we need not address the issue of whether Paniagua's allegations, if true, would have amounted to past persecution or a well-founded fear of persecution. We note, however, that Paniagua's claims would fail on the merits because he did not provide evidence that could establish a nexus between his alleged persecution and a protected ground. I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483 (1992) (noting that even if a petitioner establishes that he holds a political opinion, he must show that the guerillas will persecute him because of that opinion, "rather than because of his refusal to fight with them"). Accordingly, the petition for review is

**DENIED**.