Abderrahman CHEBCHOUB,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

Nos. 99–70564, 00–70398.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 13, 2001*

Filed July 23, 2001

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P.34(a)(2).

cause he was not credible and provided no corroborating evidence. Because Chebchoub's deportation proceedings commenced before April 1, 1997, and a final order of deportation was entered after October 30, 1996, we have jurisdiction over his petition pursuant to 8 U.S.C. § 1105a, as amended by section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Pedro–Mateo v. INS,* 224 F.3d 1147, 1149 (9th Cir.2000). We deny the petition.

Elias Z. Shamieh, Esq., Shamiyeh and Shamieh, San Francisco, California, for the petitioner.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, California, for the respondent.

Ronald E. LeFevre, Chief Legal Officer, Immigration & Naturalization Service, San Francisco, California, for the respondent.

Anthony W. Norwood, Esq. and Michael J. Dougherty, Esq., Office of Immigration Litigation, Civil Division, Washington, D.C., for the respondent.

Before: SCHROEDER, Chief Judge, WALLACE, and TALLMAN, Circuit Judges.

WALLACE, Circuit Judge:

Chebchoub petitions for review of a decision by the Board of Immigration Appeals (Board) denying him relief from deportation. Chebchoub asserts persecution on the basis of political opinion and imputed political opinion. The Board exercised jurisdiction pursuant to 8 C.F.R. § 3.1(b) and concluded that Chebchoub failed to meet his burden of establishing eligibility for asylum or withholding of deportation be-

I

Chebchoub, a native and citizen of Morocco, entered the United States on January 1, 1994. His asylum application and testimony before the Immigration Judge (IJ) set forth the following events.

Chebchoub's troubles with the Moroccan government began in 1982 when he participated in a student protest at his high school. The police, who mistakenly believed that the demonstration was engineered by the Muslim Brotherhood—a fundamentalist organization advocating violent opposition to the Moroccan government—cracked down on the protest, beating and arresting several students. In his testimony before the IJ, Chebchoub stated that he was among those both beaten and arrested by the police, while in his asylum application, he averred that he was thrashed, but escaped arrest.

Chebchoub was not a member of the Muslim Brotherhood (whose views and methods he opposed), nor any other opposition organization or movement, for fear of government retaliation. However, his brother, Mustafa, was a senior officer in Movement Forward, a socialist opposition group advocating democratic change. The author of several propaganda pamphlets and bulletins, Mustafa was said to have lived in hiding and was pursued actively by the government.

When Chebchoub enrolled in college in 1985, he asserted that several political organizations solicited his membership, including the Muslim Brotherhood and Movement Forward. Chebchoub variously averred in his testimony that he abstained from joining any group and that he joined Movement Forward. In either case, he supported Movement Forward and advocated its views among fellow students. However, it was his brother's activities as a leader of Movement Forward that he said attracted the close attention of the secret police.

He stated that the Moroccan secret police regularly visited and harassed Chebchoub and his family at home in search of Mustafa. On several occasions they ransacked the house looking for incriminating evidence, threatened and beat the family, and arrested Chebchoub and other family members, taking them "hostage" in an attempt to lure Mustafa out of hiding. Detained at various police stations for between one day and a week, Chebchoub said he was accused of being a member of Movement Forward, interrogated about his brother's whereabouts and political activities, and physically and psychologically tortured. Typically, the police would release him upon the condition that he convince his brother to surrender himself. In his testimony, Chebchoub alleged that he was detained between fifteen and twenty times.

On the last occasion, the police arrested and detained Chebchoub, his father, and another brother and subjected them to the same interrogation and torture. He reported that the police threatened that they would not release the three men unless Mustafa surrendered. After two weeks, the police coincidentally located and arrested Mustafa and subsequently released Chebchoub and the others. Mustafa was tortured then imprisoned for two-and-a-half years. Upon his release, the government expelled Mustafa from Morocco. He and his family sought and were granted asylum in France, where they currently live.

Chebchoub's testimony described encounters with the secret police continuing after Mustafa's departure as they suspected him of being Mustafa's domestic contact and disseminating pamphlets and instructions sent by Mustafa to other Movement Forward members inside Morocco. The police arrested and beat Chebchoub on several occasions. Chebchoub said that as he became more politically active in the late 1980s he was put up for membership and election as an officer in both Movement Forward and the Muslim Brotherhood and was nominated by both groups in local elections. He withdrew his name in both instances (he opposed the Muslim Brotherhood and feared government reprisal if he ran on behalf of Movement Forward); however, he asserted that the police again arrested and beat him, alternately accusing him of being a member of each opposition group.

After this experience, Chebchoub distanced himself from politics and started a construction company in 1990. His business struggled, however, because he was unable to secure government contracts. When he inquired as to why, he said he was again arrested, accused of being a member of Movement Forward, and beaten. At this point, Chebchoub resolved to leave Morocco, and the authorities gave him a document to sign promising not to return for ten years.

Since his departure in 1994, Chebchoub has been in frequent contact with his wife, who remains in Morocco. She has informed him that the police visit their home every couple of months and occasionally take her to the police station to interrogate her about his whereabouts and activities. While his parents have been questioned at

home, Chebchoub testified that they have never been arrested or taken into custody.

In October 1995 Chebchoub applied for relief from deportation proceedings, claiming persecution by the Moroccan government on the basis of political opinion, imputed political opinion, and social group. In a decision dated May 14, 1997, the IJ denied Chebchoub's application for asylum and withholding of deportation based upon an adverse credibility finding, concluding that Chebchoub's testimony was so "inconsistent, vague and implausible as to indicate that the testimony must have been fraudulent."

Chebchoub appealed to the Board, which conducted a de novo review of the record. Citing credibility concerns and a failure to supply corroborating evidence, the Board dismissed Chebchoub's appeal because he failed to meet his burden of establishing eligibility for asylum or withholding of deportation.

## II

 After a Board's de novo examination of the record, we review the Board's factual determinations—including its credibility findings—and its determination of an applicant's eligibility for asylum, for substantial evidence. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The substantial evidence standard is highly deferential to the Board, and for us to overturn the Board's decision, Chebchoub must show that the evidence compels reversal. *Pedro–Mateo,* 224 F.3d at 1150, *citing Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812. Thus, Chebchoub cannot prevail unless he demonstrates that any reasonable factfinder would necessarily conclude that he is eligible for relief from deportation. *See Fisher v. INS,* 79 F.3d 955, 961 (9th Cir.1996) (en banc).

 Chebchoub bears the burden of establishing his eligibility for asylum and

withholding of deportation. *Sangha v. INS,* 103 F.3d 1482, 1487 (9th Cir.1997). To be eligible for asylum, Chebchoub must demonstrate that he has suffered past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). A well-founded fear of persecution must be both subjectively genuine and objectively reasonable. *Pedro–Mateo,* 224 F.3d at 1150. The subjective component may be satisfied by the applicant's testimony. *Cordon–Garcia v. INS,* 204 F.3d 985, 990 (9th Cir.2000). "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Pedro–Mateo,* 224 F.3d at 1150 (internal quotation omitted).

 "Because asylum cases are inherently difficult to prove, an applicant may establish his case though his own testimony alone." *Sangha,* 103 F.3d at 1487. That is, Chebchoub's testimony, if credible, *may* be sufficient to sustain his burden of proof without corroboration. *See* 8 C.F.R. § 208.13; *Sidhu v. INS,* 220 F.3d 1085, 1090 (9th Cir.2000). However, 8 C.F.R. § 208.13

> plainly indicates that if the trier of fact either does not believe the applicant or does not know what to believe, the applicant's failure to corroborate his testimony can be fatal to his asylum application. Thus, the regulations unambiguously contemplate cases where an applicant's testimony alone will not satisfy his burden of proof.

*Sidhu,* 220 F.3d at 1090.

## III

Observing "no less than 22 ... inconsistencies," the IJ found Chebchoub's testimony "simply ... not credible enough to

sustain [his] burden," and thus denied Chebchoub asylum and withholding of deportation. The Board agreed and dismissed Chebchoub's appeal. After conducting a de novo review of the record, the Board found that Chebchoub's testimony was "vague and inconsistent in details relating to matters central to his claim. Further, there was no corroborating evidence ... that made up for the evident weakness in [his] testimony."

## A.

■■■■ Where the Board exercises its power to conduct a de novo review of the record, our review is limited to the decision of the Board, and we review its credibility finding for substantial evidence. *Cordon–Garcia,* 204 F.3d at 990. Although the substantial evidence standard is deferential, "an adverse credibility finding must be based on 'specific cogent reason[s],' which are substantial and 'bear a legitimate nexus to the finding.'" *Id.* at 993, *quoting Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996).

■■■■ In the instant case, the Board based its credibility finding on the generally vague, inconsistent and implausible nature of Chebchoub's testimony, and provided several specific examples which it believed were "central" to Chebchoub's claim: (1) inconsistencies in his testimony about whether his father was ever arrested; (2) an unsubstantiated allegation that most people in the Movement Forward organization who were arrested by the Moroccan government were killed; (3) inconsistent statements about the location of police interrogation of his wife since his departure; (4) inconsistencies in his testimony about the events leading up to and surrounding his departure; (5) discrepancies between his testimony and his affidavit regarding the number of times he was arrested in the period prior to his departure; and (6) the implausibility of portions

of his testimony, including his statements about the practice of exile in Morocco. Whether the Board's credibility finding warrants deference requires us to determine if these specific reasons are "substantial" and "bear a legitimate nexus" to the determination that Chebchoub did not meet his burden of establishing eligibility for asylum and deportation. *Id.*

■■■■ "Generally, minor inconsistencies and minor omissions relating to unimportant facts will not support an adverse credibility finding." *de Leon–Barrios v. INS,* 116 F.3d 391, 393 (9th Cir.1997). Although only one inconsistency can be sufficient, here at least two of the inconsistencies cited by the Board are not minor as they "relate to the basis for his alleged fear of persecution," *id.* at 393–94, and go to "the heart of [his] asylum claim." *Ceballos–Castillo v. INS,* 904 F.2d 519, 520 (9th Cir.1990): his testimony about the events leading up to his departure and the number of times he was arrested.

Furthermore, the Board's finding that portions of Chebchoub's testimony were implausible in light of the background evidence involves the heart of his claim. The example provided by the Board is Chebchoub's assertion that the Moroccan government commonly forced political dissidents to leave the country and to sign a document promising never to return (or, at least not for ten years). The State Department report on Morocco refutes this assertion, stating that "[t]here are no known instances of enforced exile" in Morocco and that the government offered self-imposed exiles amnesty starting in 1994.

While we have curtailed the use of State Department reports as the basis for adverse credibility findings in other contexts, *see Shah v. INS,* 220 F.3d 1062, 1069 (9th Cir.2000), our reasoning does not apply to this case. In *Shah,* the IJ and the Board

relied *exclusively* on a generalized statement from a State Department report on India to deem the applicants not credible. The country report stated that the opposition party of which the applicants were members had scored recent electoral successes, belying their assertion that it was not possible for a member to live peaceably in India. *Id.* The Board found that the applicants' contention—that they faced persecution in India as opposition party members—conflicted with the country report, and dismissed their appeal on this basis alone. We held that when the Board deems a person to be not credible, it must do so on an individualized basis and offer a "specific, cogent reason" for its disbelief. *Id.*

 In this case, unlike in *Shah,* the Board *did* conduct an individualized analysis, citing several specific reasons for its negative credibility finding. Thus, its reliance on the country report to discredit portions of Chebchoub's testimony was supplemental. Further, the report was used to refute a generalized statement made by Chebchoub—that exile was commonly practiced in Morocco—not to discredit specific testimony regarding his individual experience. "[T]he purpose of country conditions evidence ... [is] to provide information about the context in which the alleged persecution took place, in order that the factfinder may intelligently evaluate the petitioner's credibility." *Duarte de Guinac v. INS,* 179 F.3d 1156, 1162 (9th Cir.1999). Thus, the use of a country report to discredit a general assertion made by an applicant regarding the context in which his alleged persecution took place does not offend "the individualized analysis of an applicant's credibility that our case law mandates." *Shah,* 220 F.3d at 1069.

## B.

 The Board reinforced its credibility determination by finding that Chebchoub "inexplicably failed to submit corroborative evidence, although such evidence should have been available." Though supplying corroborating evidence is not required to establish an applicant's credibility, *see Lopez–Reyes,* 79 F.3d at 912, "where the [Board] has reason to question the applicant's credibility, and the applicant fails to produce non-duplicative, material, easily available corroborating evidence and provides no credible explanation for such failure, an adverse credibility finding will withstand appellate review." *Sidhu,* 220 F.3d at 1092. Here, in addition to finding Chebchoub's testimony not credible, the Board determined that he failed to meet his burden by not supplying (1) an affidavit from his brother who allegedly lives in France, (2) evidence of his Moroccan construction business, and (3) affidavits from individuals living in the United States who could support his assertion that he was associated with the Movement Forward organization.

 At least the first and third items satisfy the criteria set forth in *Sidhu:* the affidavits would have been non-duplicative, material, and easily available. First, an affidavit from Mustafa could have corroborated several of the most central elements of Chebchoub's claim, for which he supplied no other supporting evidence. Although we stated in *Sidhu* that "it is inappropriate to base an adverse credibility determination on an applicant's inability to obtain corroborating affidavits from relatives or acquaintances living outside of the United States," our stated reason was because "such corroboration is almost never easily available." 220 F.3d at 1091–92. That is not the case here: securing an affidavit from a close relative living in Western Europe should have been "a rela-

tively uncomplicated task" that would "not pose the type of particularized evidentiary burden that would excuse corroboration." *Mejia Paiz v. INS*, 111 F.3d 720, 723–24 (9th Cir.1997). While "[c]orroborating evidence is often scarce in asylum proceedings," where it is easily available (and nonduplicative and material), applicants should "bring[] it to the attention of the trier of fact." *See Sidhu*, 220 F.3d at 1090 n. 2. Because Chebchoub provided no "credible explanation," *id.* at 1092, for not providing an affidavit from his brother, it was not improper for the Board to base its decision on such failure. "[F]ailure to produce such evidence can constitute substantial evidence supporting an adverse credibility determination." *Id.* at 1091.

Second, regarding Chebchoub's failure to secure affidavits from individuals living in the United States, if it was as common as he alleged for the Moroccan government to expel political dissidents, including members of Movement Forward, it is logical that members of the organization live in the United States. If Chebchoub's testimony were true, it should have been "relatively uncomplicated" to track down someone in the United States able to support his alleged involvement with Movement Forward. *Mejia Paiz*, 111 F.3d at 723. Again, such non-duplicative evidence would have been material to Chebchoub's asylum claim, and he provided no credible explanation for his failure to produce it.

Therefore, for the foregoing reasons, substantial evidence supports the Board's determination that Chebchoub did not satisfy his burden of proof. The Board had reason to question Chebchoub's credibility, it supplied specific reasons that related to the basis for his claim, and he failed to produce non-duplicative, material, easily available corroborating evidence and gave no explanation for such failure. *See Cordon–Garcia*, 204 F.3d at 993; *Sidhu*, 220 F.3d at 1092. Because Chebchoub has not

demonstrated that the evidence compels reversal, we will not disturb the Board's decision.

In appeal 00–70398, Chebchoub petitions for review of the Board's denial of his motion to reopen. Because Chebchoub failed to brief that appeal, we consider it abandoned. *See Martinez–Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir.1996) (stating that issues not supported by argument are deemed abandoned).

PETITION DENIED.