**Ibrahima CAMARA, Petitioner,**

v.

**John ASHCROFT, Attorney General; Immigration and Naturalization Service, Respondents.**

No. 03–3359.

United States Court of Appeals, Sixth Circuit.

June 23, 2004.

Mark M. Nesbit, Nesbit Law Firm, Columbus, OH, for Petitioner.

Mary Jane Candaux, Theodore C. Hirt, U.S. Department of Justice, Washington, DC, for Respondent.

Before: MARTIN and SUTTON, Circuit Judges; and HOLSCHUH, District Judge.*

* The Honorable John D. Holschuh, United States District Judge for the Southern District

## AMENDED ORDER

Ibrahima Camara petitions for judicial review of an order of the Board of Immigration Appeals ("BIA"), which dismissed his administrative appeal of an immigration judge's finding that he was subject to removal despite his applications for asylum, the withholding of removal, and relief under the United Nations Convention Against Torture. The parties have waived oral argument, and the panel unanimously agrees that it is not needed in this case.

Camara alleged that he is a native and citizen of Mauritania, who entered the United States without authorization in 1998. He testified that he had been persecuted in Mauritania because of his race and ethnic background. An immigration judge ("IJ") found that this testimony was not fully credible and rejected Camara's applications for relief. The IJ also found that Camara had not established sufficient grounds for relief, even if it were assumed that his testimony was credible. The BIA adopted the IJ's findings when it dismissed Camara's administrative appeal.

We note that Camara has not raised any clear challenge to the denial of his claim under the Convention Against Torture. Therefore, he has abandoned this claim for purposes of judicial review. *See United States v. Mick,* 263 F.3d 553, 567 (6th Cir.2001).

To obtain asylum, Camara must show that he is a refugee and that his application merits a favorable exercise of administrative discretion. *See Mikhailevitch v. INS,* 146 F.3d 384, 389 (6th Cir.1998). A refugee is defined as an alien who is unable or unwilling to return to his home country because of persecution or a well-founded fear of persecution, based on his race, religion, nationality, membership in a particular social group, or political opinion.

of Ohio, sitting by designation.

8 U.S.C. § 1101(a)(42)(A). We may not reverse an immigration court's finding that an individual is not a refugee unless the evidence is so compelling that no reasonable fact-finder could fail to find the requisite fear of persecution. *See* 8 U.S.C. § 1252(b)(4)(B); *Yu v. Ashcroft,* 364 F.3d 700, 703 (6th Cir.2004). An asylum application is also treated as an application for the withholding of removal, even though the claimant has a more demanding burden in proving that he is eligible for the withholding of removal. *Mikhailevitch,* 146 F.3d at 391.

Camara primarily alleged that he had been persecuted in Mauritania because of his race and ethnic background. In particular, he alleged that the military evicted his family from their home in 1989, arrested him because he resisted, and forced his family to cross the river into Senegal. Camara alleged that he was imprisoned for eighteen to twenty-one months. He offered the following testimony regarding his treatment during that time:

> A. When we were in jail, we were given some kind of threat every day. We weren't being allowed to eat a lot ... and every day we were forced to get out and do some kind of hard work for them—cleaning up—cleaning their cars or sweeping the area where they were or going to the street and sweeping the street....

Camara also testified that he was forced to cross the border into Senegal, when he was released from incarceration in 1992.

Camara argues that the IJ's credibility finding was not based on substantial evidence. However, the IJ's factual determination regarding credibility must be upheld unless "any reasonable adjudicator

would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). In the instant case, the IJ cited several inconsistencies between Camara's written application and hearing testimony that went to issues that were central to the merits of his asylum claim. In particular, Camara's application indicates that he was beaten during the time that he was imprisoned and forced by the military to perform hard labor in the fields for ten hours a day. However, his direct testimony does not indicate that he was beaten or forced to perform this type of labor.

Camara argues that the IJ's credibility finding was improperly based on the lack of corroborating evidence. However, the IJ properly noted the lack of corroborating evidence after the inconsistencies in Camara's testimony had placed his credibility in doubt. See Chebchoub v. INS, 257 F.3d 1038, 1043–45 (9th Cir.2001). The IJ also found that Camara's testimony was hesitant and vague with regard to the conditions of his confinement and the manner in which he had traveled to the United States. In light of these discrepancies, the IJ found that Camara's allegations of past persecution were not credible. A review of the record would not compel any reasonable adjudicator to reach a contrary conclusion. See 8 U.S.C. § 1252(b)(4)(B).

The IJ also found that Camara had not submitted sufficient evidence to show that he was a citizen of Mauritania. The BIA found that the identity card that Camara submitted was not probative evidence on this point because it had not been certified, as prescribed by 8 C.F.R. § 287.6. Camara now argues that the identity card was a self-authenticating document under Fed. R.Evid. 902. We need not reach that issue, however, as the rejection of his asylum claim was adequately supported on other grounds.

In light of the IJ's finding that the allegations of past persecution were not credible, Camara has not presented compelling evidence to support his asylum claim. Indeed, the IJ found that Camara would not have a persuasive claim for asylum even if his testimony were credible, as a State Department report indicates that conditions have improved in Mauritania and that almost one-half of the 70,000 black Moors who were expelled between 1989 and 1991 have now returned. See Woldemeskel v. INS, 257 F.3d 1185, 1190–91 (10th Cir.2001). As Camara has not established eligibility for asylum, he is necessarily unable to meet the more rigorous standard that is required for the withholding of removal. See Mikhailevitch, 146 F.3d at 391.

Accordingly, the petition for judicial review is denied.