**Qi Sheng WANG, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

**No. 03–73747.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 2005.

Decided Oct. 6, 2005.

---

David Z. Su, Esq., Law Offices Of David Z. Su, El Monte, CA, for Petitioner.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Jocelyn Lopez Wright, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Sarah Maloney, U.S. Department of Justice, Washington, DC, for Respondent.

Before: FARRIS, THOMPSON, and BYBEE, Circuit Judges.

## MEMORANDUM *

Petitioner Qi Sheng Wang appeals a September 29, 2003 decision of the Board of Immigration Appeals concluding that petitioner failed to establish his eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. Wang claims that he will face persecution if returned to China because of his and his wife's noncompliance with the Chinese government's coercive birth control policies. Arguing that the inconsistencies in his testimony and between his testimony and the State Department country report are minor and the result of confu-

sion rather than evasion, he urges this Court to hold that the decision of the BIA was not supported by substantial evidence. We deny the petition for review.

The BIA affirmed the decision of the Immigration Judge on two grounds. First, the BIA, citing the State Department country report, found that Wang's claim that he had no knowledge of the birth control policies before he was fined for violating them was implausible in light of the extensive enforcement of the policies.[1] Second, it found that Wang's claimed ignorance of the policies prior to the April 30, 1997 fine was inconsistent with his later testimony that he applied for a birth permit in June 1996, and that he was aware of the need to apply for a permit based on the experiences of other villagers.

"[W]e review the [BIA's] factual determinations—including its credibility findings—and its determination of an applicant's eligibility for asylum, for substantial evidence." *Chebchoub v. INS*, 257 F.3d 1038, 1042 (9th Cir.2001). "Although we normally limit our review to the BIA's opinion, where ... the BIA expressly adopt[s] the IJ's reasoning, we also review the IJ's decision." *Wang v. Ashcroft*, 341 F.3d 1015, 1020 (9th Cir.2003).

The substantial evidence standard is highly deferential to the Board, and for us to overturn the Board's decision, [the petitioner] must show that the evidence compels reversal. Thus, [the petitioner] cannot prevail unless he demonstrates that any reasonable factfinder would

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. The IJ described his finding about the enforcement level as being based on his knowledge that most asylum applications come from the Fujian Province. (A.R.45.) While

this finding would be impermissible because it lacks evidence to support it, the BIA, in adopting the IJ's opinion on this point, cited the country report. Wang agrees that the BIA's decision was based on the country report rather than the IJ's speculation. (Brief for Petitioner 13.)

necessarily conclude that he is eligible for relief from deportation.

*Chebchoub,* 257 F.3d at 1042 (citations omitted).

However, the BIA " 'must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief, and any such reasons must be substantial and bear a legitimate nexus to the finding.' " *Singh v. INS,* 292 F.3d 1017, 1020 (9th Cir.2002) (quoting *Osorio v. INS,* 99 F.3d 928, 931 (9th Cir.1996)). "If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.' " *Shah v. INS,* 220 F.3d 1062, 1068 (9th Cir.2000) (quoting *Damaize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986)). "[U]nclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony." *Guo v. Ashcroft,* 361 F.3d 1194, 1200 (9th Cir.2004).

Wang first argues that there was no inconsistency between his claimed ignorance of birth control policies and the State Department country report because the report does not state that education programs were implemented in all villages, or in his village specifically. Wang argues that the report cannot be used to contradict his specific testimony. *See Shah,* 220 F.3d at 1069–70 (holding that BIA erred "by relying exclusively on a blanket statement in a State Department report"). However, he agrees with the report that authorities generally enforced the birth control policies through coercive means, such as forced abortion and sterilization,

detention, and the destruction of property. He also does not take issue with the report's description that generally, village officials implement education programs. The fact that the report does not describe the specific acts taken in Wang's village does not compel a conclusion that Wang's testimony is consistent with the report's description of country conditions generally. The BIA properly used the State Department report to supplement its evaluation of Wang's claims in light of the general country conditions. *See Chebchoub,* 257 F.3d at 1044.

Wang next claims that the part of the transcript in which he states "I didn't know" in response to a question about his knowledge of China's birth control policies (A.R.99), a response that is the sole basis for the BIA's credibility determination, may simply reflect his misunderstanding of the question, given the communication difficulties apparent from the transcript and the train of questioning, which concerned birth control education.[2] *See Bandari v. INS,* 227 F.3d 1160, 1166 (9th Cir.2000) (" '[W]e have long recognized that asylum hearings frequently generate mistranslations and miscommunications.' " (quoting *Maini v. INS,* 212 F.3d 1167, 1176 (9th Cir.2000))). Wang also points out that he almost immediately corrected his answer, stating in response to a question about his wife's knowledge: "I do know the birth control policy." (A.R.99.) However, the mere possibility that his answer was a mistake rather than an attempt to mislead does not rise to the high standard that no reasonable factfinder could conclude otherwise.

---

**2.** The government's claim that *Pal v. INS,* 204 F.3d 935, 939 (9th Cir.2000) forbids a petitioner from presenting any explanation for apparent inconsistencies that was not made before the BIA is without merit. *Pal* involved a due process claim, not a question of waiver.

*Id.* A rule such as the government suggests would provide no avenue for review of the BIA's independent findings. Regardless, Wang did present these explanations to the BIA. (A.R.14–15.)

Wang next argues that the BIA failed to explain the significance of the discrepancy, since his prior knowledge of the birth control policies is irrelevant to the question of whether he was persecuted for violation of the policies. However, the BIA stated that the implausibility of Wang's statement in light of the country report, coupled with his later contradictions of it, made his story not credible. While Wang claims these were mere minor discrepancies, they concerned events central to his version of why he was persecuted and fled. *See Chebchoub*, 257 F.3d at 1043 (holding that inconsistencies about events leading up to departure from country and number of times arrested went to "the heart of [petitioner's] asylum claim" (quoting *Ceballos–Castillo v. INS*, 904 F.2d 519, 520 (9th Cir.1990))). Therefore, we cannot say that the BIA's decision was not supported by substantial evidence.

Finally, Wang argues that even if there were discrepancies, they cannot be seen as attempts to enhance his claim for persecution. However, again Wang is tripped up by the high standard of review. A reasonable factfinder could conclude, based on the evidence reviewed by the BIA, that Wang believed his knowing disregard of China's policies would weaken his claim for asylum. His initial statement that he did not know of the policies could reasonably be seen as an attempt to fortify his portrayal of his good moral character.

PETITION FOR REVIEW DENIED.