[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16055
Non-Argument Calendar

_____

BIA No. A97-193-666

ELBA CORINA MORA LANCHEROS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 7, 2007)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Elba Corina Mora Lancheros[1], a native and citizen of Venezuela, petitions

for review of the final order of the Board of Immigration Appeals (BIA), which

(1) affirmed the Immigration Judge's (IJ) decision denying her applications for

asylum and withholding of removal under the Immigration and Nationality Act

(INA), and relief under the United Nations Convention Against Torture and Other

Cruel, Inhuman, or Degrading Treatment or Punishment (CAT), 8 U.S.C. §§ 1158,

1231; 8 C.F.R. § 208.16(c); and (2) denied her motion for remand. Mora asserts

that the BIA's adverse credibility determination is not supported by substantial

evidence because it was based upon the IJ's mischaracterization of her claims and

incorrect analysis of her testimony. She further contends that the BIA erred in

failing to remand her case to the IJ because she provided sufficient evidence that

her counsel had been ineffective during her initial proceedings. For the reasons set

forth more fully below, we deny her petition for review.

## I. Background

Mora entered the United States as a non-immigrant visitor and remained

beyond her date of authorization. In January 2004, Mora filed a timely application

for asylum, withholding of removal, and CAT relief. In support of her application,

Mora submitted a three-page letter that she wrote, including both her Spanish

---

[1]Throughout the proceedings before the IJ and BIA, and in the parties' briefs on appeal, the petitioner is referred to as Ms. Mora. Therefore, we use "Mora" when referring to the petitioner.

version and the English translation, which was certified by a translator. According to the letter, Mora began participating in political and social activity in 1993, as a "social volunteer" in the political organization Copei, where she did "social work in the poor neighborhoods in the city." During college, Mora continued working in the poor areas of her country, but she became hated by members of other political groups who believed that her activity harmed them. After college, Mora worked at her father's publicity company and, after attempting to refrain from political activities, she again began her social and political activity once Chavez became the president of Venezuela. Clients of Mora's father's company began to demand that she leave the company and, in an attempt to save the company from harm, Mora quit her job and "dedicate[d] [herself] to private activities." Nonetheless, Mora's father's company had to end its commercial activities in order "to evade bad actions happening to the employees and installations." Mora received "anonymous faxes and telephone calls, cellular messages [that] turned into daily stalking."

Mora further indicated in her letter that the Venezuelan government formed "Bolivarian Circles," which she described as "groups of people, the majority with no education that support the government using violence, and all people that are not with them are an enemy in strength." The stalking, persecution, and personal threats that Mora had experienced intensified, requiring her to hide in houses of her family and friends. Mora complained and petitioned for help, but her claims were

3

never investigated and she never received any help. Mora transferred to Barquisimeto Lara State and took a new job at a San Rio "Hello Kitty" franchise. However, she again received hostility and threats of kidnapping, which were more direct and specific, and included the names and addresses of her family members. On December 2, Mora's company participated in the National Stop, which was an employment strike. The threats intensified because of her company's participation in the National Stop and there was a cellular phone call in which someone told Mora's company to open its store or "they would sack it." Mora finally stated in her letter that all of those incidences "made a huge psychological pressure" on her that caused her to flee to the United States during a company sales convention held in Miami, Florida.

At her removal hearing, Mora testified that, on January 31, 2003, two members of the Bolivarian Circle approached her outside of a mall and told her that they would kill her if she did not stop collecting signatures in support of the recall of the Venezuelan president. The two people detained her for 10 or 15 minutes and they also pushed her, but the people did not have any weapons. Mora ran inside the mall, informed the authorities inside, called her sister and girlfriends, and decided to go immediately home. Mora also testified that she received six pamphlets over a two-week period at her business and her house that directly threatened her and the Copei group.

4

The IJ denied Mora's applications based upon its adverse credibility finding, and Mora appealed to the BIA. While her appeal was pending, Mora filed a motion to remand, arguing that her counsel was ineffective for failing to elicit testimony at the removal hearing regarding the fact that the two people who approached her on January 31, 2003 also stabbed her with a screwdriver.

The BIA dismissed Mora's appeal and denied her motion to remand. In so doing, the BIA explained that the most notable discrepancies between Mora's written statement and testimony were her failure to mention in her written application: (1) her January 31, 2003 encounter with members of the Bolivarian Circles; (2) her activity of collecting signatures; and (3) her receipt of threatening pamphlets. The BIA noted that Mora's only explanation for her omissions was that she believed her written statement had to be general, but that reason did not explain her inclusion in her written statement of many other less important details.

With regard to Mora's motion to remand, the BIA found that, based upon Mora's hearing counsel's letter and Mora's affidavit, she had never revealed to her counsel that she had been stabbed. The BIA therefore concluded that the omission of the stabbing incident during the hearing was not the result of ineffective assistance of her counsel. The BIA lastly found that Dr. Coe's letter, which Mora submitted in support of her motion to remand and which detailed Mora's stab wounds and scars, did not alone warrant a remand and, moreover, that evidence

5

was not previously unavailable.

## II. Substantial Evidence Supports the BIA's Determination

Mora contends that the IJ's adverse credibility finding was not supported by substantial evidence because it was based upon the IJ's mischaracterization of her claims as presented in her application and incorrect analysis of her testimony. She asserts that the BIA's decision also is erroneous because the omissions that it cited did not support an adverse credibility finding where there were no contradictions between her written statement and her testimony. She argues that her application was merely a generalized account in which omissions may be expected and that, absent any inconsistencies between her application and her testimony, the omission of specific incidents should not have supported the IJ's and BIA's adverse credibility determination.

The BIA in this case did not expressly adopt the IJ's decision, and, thus, we review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that this Court reviews the BIA's decision; but "[i]insofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo the legal determinations of the BIA. Id. Factual determinations are reviewed under the substantial evidence test, and we "affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282,

1286 (11th Cir. 2005) (quotation omitted). Therefore, we will reverse a finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Forgue, 401 F.3d at 1287 (quotations omitted).

The testimony of an applicant, if found credible, is alone sufficient to establish eligibility for asylum. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). "[T]he IJ must offer specific, cogent reasons for an adverse credibility finding." Forgue, 401 F.3d at 1287. "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. However, an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by the asylum applicant. Id.

Although we have not directly addressed the issue, the Third Circuit and Ninth Circuit have held that minor inconsistencies will not support an adverse credibility finding, but rather, only inconsistencies that go "to the heart of [the] asylum claim" are sufficient to support such a finding. See e.g., Gao v. Ashcroft,

7

299 F.3d 266, 272 (3d Cir. 2002); Chebchoub v. I.N.S., 257 F.3d 1038, 1043 (9th Cir. 2001).[2] However, neither of these circuits cite any statute or regulation for this demarcation in credibility determinations. Nonetheless, we need not resolve this issue here because the omissions cited by the BIA do indeed relate to Mora's fear of persecution, and, thus, go to the heart of her asylum claim.

Upon review of the record, we conclude that the BIA gave specific, cogent reasons for its credibility determination, and those findings are supported by substantial evidence. The BIA's adverse credibility finding was primarily based on the following omissions from Mora's written statement: (1) that she was approached and threatened by members of the Bolivarian Circles on January 31, 2003; (2) that she had been collecting signatures to recall the Venezuelan president and that the activity resulted in threats to her safety; and (3) that she had received pamphlet threats warning her to stop her political activity. Mora does not contest the BIA's findings that she omitted the above-mentioned incidents from her written application. Rather, Mora argues that her omissions were a result of her generalized written statement and were not an indication of her credibility because

_____

[2] In the REAL ID Act of 2005, Congress amended the law regarding credibility determinations to permit an adverse credibility finding based on the totality of the circumstances, which may include inaccuracies or falsehoods that do not go to the "heart of the applicant's claim." See Pub. L. No. 109-13, § 101(a)(3), 119 Stat. 230, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)). Because Mora filed her application before May 11, 2005, the date the REAL ID Act was enacted, however, these new provisions do not apply to her claim. Id. § 101(h)(2), 119 Stat. 230, 305.

8

there existed no contradictions between her written statement and her testimony. However, Mora's explanation that she merely provided a "generalized" written statement and more specific testimony, does not compel the reversal of the BIA's credibility finding. As Mora testified at her removal hearing, the event on January 31, 2003, where she was approached, threatened, and pushed by members of the Bolivarian Circles, combined with the threatening pamphlets she received during a two-week period that instructed her to stop collecting signatures, was what prompted her to ultimately flee to the United States. As such, those events were material and went to the heart of Mora's asylum claim. The record therefore evidences Mora's embellishment of her material claims, thereby further supporting the BIA's adverse credibility determination. See Ruiz, 440 F.3d at 1255.

As to Mora's argument that the BIA's decision is erroneous because it is based upon the IJ's credibility determination that mistakenly characterized Mora's written statement, that argument is without merit. As the government concedes, the IJ over-broadly construed Mora's written statement to be solely about the persecution she suffered as a result of her work at her father's company. A careful review of Mora's written statement indicates that she stated that she began receiving threats while she worked at her father's company and that those threats continued and worsened when she took her job in San Rio. Despite the IJ's mischaracterization, the IJ's decision is not wholly tainted, as Mora argues on

9

appeal. Rather, as discussed above, the IJ's specific findings regarding the omissions that supported its credibility determination are supported by substantial evidence in the record. Thus, to the extent that the BIA relied upon the IJ's factual findings, the BIA's determination that Mora's three material omissions called into question her credibility was not affected by the IJ's interpretation of the focus of Mora's written statement.

### III. Mora's Motion to Remand

Mora also argues that the BIA erred in denying her motion to remand her case to the BIA on the grounds that her counsel was ineffective for failing to properly examine her, investigate her claim, and present evidence to the IJ that she had been stabbed with a screwdriver on January 31, 2003 during her encounter with the two Bolivarian Circle members. Mora asserts that, had her counsel more fully investigated and developed her claim, there was a reasonable probability that the outcome of her hearing would have been different.

Initially, we address the government's assertion that Mora's motion for remand should be treated as a motion to reopen. The government correctly notes that this Court, as well as the BIA, treats motions to remand as either part of the appeal or as motions to reopen. Al Najjar, 257 F.3d at 1301. "[I]f a motion to remand seeks to introduce evidence that has not previously been presented, it is generally treated as a motion to reopen under" 8 C.F.R. § 1003.2(c). Id. Mora's

10

motion sought to introduce evidence of the stabbing that she did not previously present before the IJ, and, thus, we will treat her motion to remand as a motion to reopen.

"We review the BIA's denial of a motion to reopen for an abuse of discretion." Abdi v. U.S. Att'y Gen., 430 F.3d 1148, 1149 (11th Cir. 2005). "Our review is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." Id. (quotation omitted).

Pursuant to 8 C.F.R. § 1003.2(c)(1), "[a] motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary material." "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 1003.2(c)(1).

We have determined that, in removal proceedings, an alien may raise a claim of ineffective assistance of counsel in a motion to reopen. Dakane v. U.S. Att'y Gen., 399 F.3d 1269, 1273 (11th Cir. 2005). "In order to establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it

11

impinged upon the fundamental fairness of the hearing such that the alien was unable to reasonably present his or her case." Id. at 1273-74 (quotation omitted). An alien must also establish that she suffered prejudice as a result of her counsel's deficient performance. Id. at 1274.

Here, Mora has failed to established that her counsel's performance was deficient. Mora claimed before the BIA that her counsel should have elicited testimony during her direct examination regarding her allegation that she was stabbed by Bolivarian Circle members on January 31, 2003. In support of her claim, Mora submitted her affidavit, in which she did not claim that she informed her counsel of the stabbing incident; rather, she indicated that she mistakenly failed to correct the omission in her written statement because she "thought it preferable to continue with the story that had already been prepared." Mora also submitted a letter from her counsel, in which her counsel indicated that Mora did not tell him about the stabbing incident. Given the record evidence, and Mora's admission on appeal that her counsel "did not violate his ethical or legal responsibilities," the BIA did not abuse its discretion in denying Mora's motion to reopen on the grounds that her counsel's performance was not deficient.[3]

_____

[3]Even if we conclude that Mora's counsel was ineffective in failing to interview Mora further to determine her entire claim, as she now alleges, the record indicates that counsel's failure to do so did not prejudice Mora where she had multiple opportunities during her direct examination to further elaborate on the events of January 31, 2003. Specifically, during Mora's testimony at the removal hearing, her counsel asked her several open-ended questions about

12

Furthermore, the BIA also did not abuse its discretion in denying Mora's motion to reopen on the grounds that the evidence she sought to present upon reopening could not have previously been discovered or presented to the IJ. Mora explicitly indicates that the stabbing incident occurred on January 31, 2003. She filed her asylum application in January 2004 and her removal hearing was held on May 3, 2005. As such, Mora had more than ample time to obtain the letters and doctors' evaluations that she submitted with her motion to reopen. Accordingly, Mora failed to comply with 8 C.F.R. § 1003.2(c)(1)'s requirement that the "evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing . . . ." 8 C.F.R. § 1003.2(c)(1).

## IV. Conclusion

The BIA provided specific, cogent reasons for its adverse credibility determination that were supported by substantial evidence, and, as such, the BIA did not err in affirming the IJ's denial of Mora's applications for asylum, withholding of removal, and CAT relief. Additionally, the BIA did not abuse its discretion in denying Mora's motion to reopen because she received effective assistance of counsel and she failed to present evidence that was previously unavailable. In light of the foregoing, Mora's petition for review is **DENIED.**

---

what the two Bolivarian Circle members did to her and whether she experienced "anything else" in Venezuela.

13