[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 28, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16400
Non-Argument Calendar

_____

BIA Nos. A79-471-018 & A79-086-616

GLORIA ISABEL SOLANO,
MAURICIO EDGARDO VELLOJIN,

                                                      Petitioners,

versus

U.S. ATTORNEY GENERAL,

                                                      Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 28, 2007)**

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Gloria Isabel Solano, on behalf of herself and her husband (hereinafter "petitioners"), petitions for review of the Board of Immigration Appeals' ("BIA") decision affirming the immigration judge's ("IJ") denial of her applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c). On appeal, the petitioners argue that substantial evidence did not support the BIA's finding that the petitioners failed to present a credible claim for relief. For the reasons discussed more fully below, we dismiss the petition in part and deny in part.

## I. Background

Solano, a native and citizen of Colombia, entered the United States on December 23, 2000, as a nonimmigrant visitor for pleasure, with authorization to remain until June 22, 2001. Solano's husband, Mauricio Edgardo Vellojin, also a native and citizen of Colombia, arrived in the United States on August 2, 2001, as a nonimmigrant visitor for pleasure, with authorization to remain until February 1, 2002. The petitioners remained beyond their authorized dates and the Immigration and Naturalization Service ("INS")[1] served them with notices to appear, charging

---

[1]The INS was abolished on March 1, 2003, and replaced with the Department of Homeland Security ("DHS"). See Homeland Security Act, Pub.L.No. 107-296 (Nov. 25, 2002), 116 Stat. 2135.

them with removability pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

## A. Application and Removal Hearing

On April 11, 2001, Solano filed an application for asylum, withholding of removal, and withholding of removal under the CAT based upon her political opinion and membership in a particular social group. In a statement attached to her application, Solano attested as follows. In Colombia, Solano had worked as the Director of the Library at the Institute of Beauty Arts ("Institute") and had been a member of the Liberal Party. Her duties as Director included distributing and receiving publicity notices, organizing meetings and cultural events, inviting political candidates to visit the Institute, and collecting signatures and distributing flyers for special causes. On October 9, 2000, while she was engaged in displaying publicity notices around the Institute, she found a package of pamphlets from the National Liberation Army ("ELN"), which included a letter that requested that Solano distribute the pamphlets to students, collaborate with the ELN's cause, and stop promoting the Liberal Party's ideas. Solano informed the Institute's committee members about the incident, who advised her to destroy the pamphlets and not tell anyone else about the incident.

On November 17, 2000, a man approached Solano as she was talking with a group of students and told her that, "we gave you a mission." Solano was afraid and she told her husband about the encounter, but he asked her to calm down and

3

wait until the end of the academic semester, which was almost over, "to see what happened." On December 4, 2000, she received a phone call at her office in which "they" told her that she had to collaborate with them and that they knew her steps. The caller also asked her whether her job was more important than her life. Because of her fear, Solano left work and later called the Institute, told them what had happened, and informed them that she wanted to quit her job. The supervisors at the Institute asked her to give them a resignation letter, "so [she] decided to work until December 15."

Solano further attested that, on December 20, 2000, she received a threatening phone call in which "they" indicated that Solano would pay for her treason. Due to her fear, she and her husband left their house that night, stayed at a friend's house, and decided to leave for the United States on December 23, 2000. Her husband returned to Colombia on January 19, 2001, but did not return to their house. She also indicated that she was aware that "mail" and "packets" had arrived at her house and that "strange people" had asked her porter about her whereabouts.

In May 2003, Solano testified at a removal hearing before the IJ. According to her testimony, she had informed the "head" of the Institute, her husband, and the President of the Liberal Party about the first communication that she received from the ELN. Solano further testified that she had obtained a visa in August 2000 because her husband previously had traveled to the United States to visit his aunt

4

and had told Solano how wonderful it was.  After she and her husband had been in the United States for one month, her husband returned to Colombia for treatment of his chronic sinusitis because they did not have insurance in the United States. Her husband received medicine from a clinic in Colombia and he also worked while in Colombia, but did not go back to their house.  Her husband returned to the United States in August 2001, because it took him eight months to get his medical problem under control.  On cross-examination, Solano testified that her husband received one threatening phone call while back in Colombia, but that he believed it was a joke and the caller did not identify himself as a member of the ELN.

**B.  IJ's and BIA's Decisions**

The IJ denied the petitioners' applications for asylum, withholding of removal, and CAT relief, finding that Solano's claim was not credible.  The petitioners appealed to the BIA and the BIA affirmed the IJ's decision on the merits, but it did not address the IJ's adverse credibility finding.  On appeal to this Court, the government moved to have the case remanded to the BIA to allow the BIA the opportunity to address the IJ's findings, as required by 8 C.F.R. § 1003.1(d)(3)(i).  We granted that motion and remanded to the BIA.

On remand, the BIA issued a new decision on November 22, 2006.  The BIA found that the IJ's adverse credibility determination was not clearly erroneous because the IJ identified specific reasons for the determination that went to the

heart of the petitioners' claim. In particular, the BIA found that Solano's written statement was inconsistent with her testimony in that her written statement indicated that she had told the members of the Institute's committee about the communication she had received from the ELN, but she testified that she told only the head of the Institute. The BIA thus determined that the record remained unclear as to the persons who may have informed the ELN about Solano's disclosure of the fact that she had received the communication from the ELN. Secondly, the BIA found a material discrepancy with regard to whether the ELN still continues to search for her in Colombia. The BIA noted that Solano's written application indicated that "mail" and "packets" had been sent to her house and that strange people had inquired of her porter regarding her whereabouts, but that she failed to mention those details in her testimony. The BIA concluded that the petitioners had not meet their burden for establishing asylum, withholding of removal, or CAT relief, and, thus, dismissed the petitioners' appeal.

## II. Discussion

The petitioners argue that the BIA erred in upholding the IJ's adverse credibility finding because the petitioners provided consistent and substantial evidence in support of their claims. They assert that the IJ's adverse credibility determination was clearly erroneous for three reasons. First, the IJ's decision was based upon his personal and biased views regarding Colombian asylum applicants

6

and his speculation concerning the severity of Solano's husband's medical condition and the availability of treatment in the United States. Second, the IJ failed to consider the other evidence in the record, namely, the letters from the President of the Institute and the President of the Liberal Party in Bello. Lastly, the petitioners assert that the IJ failed to follow required procedures for immigration judges, specifically, the IJ ignored or overlooked evidence in the record and failed to present specific, cogent reasons for the adverse credibility determination, thereby depriving the petitioners of due process. The petitioners also contend that the BIA affirmed the IJ's decision based upon minor discrepancies between the written application and Solano's testimony, without considering the IJ's error in ignoring substantial evidence in the record.

The BIA in this case did not expressly adopt the IJ's decision. As such, we will review only the BIA's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review only the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review de novo the legal determinations of the BIA. Id. Factual determinations are reviewed under the substantial evidence test, and we will "affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (quotation omitted). Therefore, we will reverse a

finding of fact "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal . . . ." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "A credibility determination, like any fact finding, may not be overturned unless the record compels it." Forgue, 401 F.3d at 1287 (quotations omitted).

As an initial matter, the government argues that we lack jurisdiction to consider many of the petitioners' arguments raised on appeal. We review our subject matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). We lack jurisdiction to consider a challenge raised in a petition for review that the petitioner did not exhaust before the BIA. Id. Here, the petitioners enumerated three grounds for error in their notice of appeal to the BIA: (1) the IJ incorrectly characterized the nature of Solano's written evidence; (2) the IJ attached too much weight to the fact that Solano's husband returned to Colombia for medical treatment; and (3) the IJ failed to account for the fact that the petitioners fled Colombia with little time to gather corroborative evidence in support of their claim. The petitioners also argued in their statement in lieu of a brief that the IJ's credibility finding was based upon immaterial contradictions between Solano's testimony and application and that the IJ's comment in his oral decision regarding the nature of Solano's political involvement was "out of place" and illustrated the IJ's bias against the petitioners.

8

It is clear, then, that the petitioners' did not exhaust before the BIA the following claims, which they now raise here on appeal: (1) the IJ improperly speculated about the severity of Solano's husband's medical condition; (2) the IJ ignored or failed to consider evidence in the record; and (3) the IJ failed to comply with procedures applicable to immigration judges. Thus, we lack jurisdiction to consider those claims, as the petitioners failed to exhaust them before the BIA.

However, with regard to the petitioners' argument that the IJ's decision was based upon his personal views and bias against Colombian asylum applicants, the question of whether the petitioners raised that argument before the BIA is not as clear. As noted above, the petitioners did specify before the BIA that the IJ's comments regarding the nature of Solano's political involvement illustrate bias against the petitioners. Nonetheless, that argument is not the same as the argument presented to this Court, namely, that the IJ's entire decision was wrought with inappropriate personal opinions, sarcasm, and bias by the IJ. Therefore, to the extent that the petitioners now expand their argument to include facts and issues that were not presented to the BIA, we lack jurisdiction to address those arguments. See 8 C.F.R. § 1003.3(b) (explaining that the statement in a notice of appeal to the BIA "must specifically identify the findings of fact, the conclusions of law, or both, that are being challenged").

Accordingly, we lack jurisdiction over the majority of the arguments the

9

petitioners raise in their appellate brief. A careful reading of the petitioners' brief indicates that they also vaguely raise the issue of whether the BIA erred in affirming the IJ's credibility determination where the determination was based upon minor discrepancies between Solano's written application and testimony. The petitioners also raised that issue before the BIA and, as such, we retain jurisdiction to consider the merits of that claim.

The testimony of an applicant, if found credible, is alone sufficient to establish eligibility for asylum. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). "Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1255 (11th Cir. 2006). "[T]he [BIA] must offer specific, cogent reasons for an adverse credibility finding." Forgue, 401 F.3d at 1287. "[A]n adverse credibility determination alone may be sufficient to support the denial of an asylum application." Id. However, an adverse credibility determination does not alleviate the BIA's duty to consider other evidence produced by the asylum applicant. Id.

Here, the BIA found that the IJ's ultimate credibility finding was supported by the following specific reasons: that material discrepancies existed between Solano's written application and her testimony regarding (1) what persons she told about the pamphlets and letter she received from the ELN, and (2) whether she had

10

received mail, packets, and inquiries from strange persons at her home after she and her husband had fled to the United States. With regard to the first reason, that Solano's written application indicated that she had told the Institute's "committee" about her communication from the ELN, but that she testified that she had told only the head of the Institute, the evidence in the record establishes that discrepancy, as demonstrated by a review of Solano's written statement and her testimony.

It is noteworthy, however, that this reason is minor and does not appear to go to the heart of the petitioners' claim that Solano suffered past persecution by the ELN. Moreover, the government makes the conclusory statement that this discrepancy was material, but it does not explain that nature of its materiality to the petitioners' claim of persecution. Other circuits have held that minor inconsistencies will not support an adverse credibility finding, but inconsistencies that go "to the heart of [the] asylum claim" are sufficient to support such a finding. See e.g., Chebchoub v. I.N.S., 257 F.3d 1038, 1043 (9th Cir. 2001); Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We have never adopted the "heart of the claim" test.[2] However, we need not resolve this issue here because the BIA's

_____

[2]Congress recently amended the law regarding credibility determinations, but those changes only apply to applications for asylum filed after May 11, 2005. See Section 101(h)(2) of the REAL ID Act. Under the new law, the credibility determination is based on the totality of the circumstances, which may include inaccuracies or falsehoods that do not go to the "heart of the applicant's claim." Id. at § 101(a)(3)(B)(iii). Because the petitioners filed their application

11

second reason supporting its adverse credibility finding relates to the petitioners'

fear of persecution, and, thus, goes to the heart of their asylum claim.

As to the BIA's second reason in support of the adverse credibility finding,

that Solano did not testify that she received "mail" and "packets" at her house or

that "strange people" had inquired of her porter regarding her whereabouts, that

discrepancy is material to the question of whether the ELN is still searching for

Solano, such that she had a well-founded fear of future persecution if she returned

to Colombia. Furthermore, the record does indeed demonstrate that such a

discrepancy existed between her written application and her testimony. However,

as the petitioners argue, this reason is undermined by the fact that neither Solano's

counsel nor the IJ ever asked Solano generally what had occurred, if anything,

since she left Colombia; rather, the IJ asked only whether her husband had

experienced any harm or threat during his eight-month return to Colombia. Yet, at

one point during the hearing, the IJ asked Solano what she thought would happen

to her if she returned to Colombia. Solano indicated that she would be killed and

that she had proof because a co-worker at the Institute had also worked for the

Liberal Party, had been threatened, and had sought asylum in Spain. Solano did

not mention that her "proof" included that she had received mail and packets at her

house or that strange people had inquired of her whereabouts. "[Solano] - not the

_____

in 2001, their application is unaffected by this change.

12

IJ - bears the burden of proving eligibility for asylum." See Ruiz, 440 F.3d at 1256.

## III. Conclusion

Based upon the foregoing, the BIA presented two specific, cogent reasons in support of its adverse credibility finding that were supported by substantial evidence in the record. Moreover, at least one of the reasons was material to the petitioners' claim. Accordingly, we dismiss the petition in part, as it seeks review of issues over which we lack jurisdiction, and we deny the petition in part, to the extent that it challenges the BIA's reasons in support of its adverse credibility finding.

**PETITION DISMISSED IN PART, DENIED IN PART.**